4:26CV5638

FIRST AMENDED / RESTATED COMPLAINT

FOR DAMAGES AND DECLARATORY RELIEF UNDER 42 U.S.C. § 1983

United States Courts
Southern District of Texas
FILED

SEP 30 2026

Nathan Ochsner, Clerk of Court

## I. NATURE OF THE ACTION

### PRELIMINARY STATEMENT

1. Plaintiff Albert Terrence Johnson brings this civil action against the defendants named above for violations of his rights under the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks all relief available under 42 U.S.C. §1983, including compensatory damages, declaratory relief, nominal damages where appropriate, punitive damages against individual Defendants where legally available, costs, attorney's fees where authorized by law, and such other relief as the Court deems proper

2. On July 14, 2023, Plaintiff was stopped while driving his personal vehicle on the North Sam Houston Toll Road in Harris County, Texas. What began as a traffic stop escalated into a false arrest, illegal seizure, falsified criminal complaint by the affiant, excluding probable cause in fact of the alleged criminal actions, an unreasonable search of Plaintiff's person and property, a criminal prosecution initiated and continued on the basis of a criminal complaint that, on its face, conflicts with the arresting officer's own written report. which later led to multiple occurrences of detention in which the plaintiff was deprived of life and liberty without due process. Plaintiff was detained on multiple occasions over the following year, was denied a timely and adequate hearing on his repeated challenges to the trial court's subject matter jurisdiction, and was ultimately vindicated when the State of Texas moved to dismiss all charges one day before trial was set to begin, on August 6, 2024, citing insufficient evidence.

3. This action seeks to hold accountable those defendants whose conduct falls outside the protection of any immunity doctrine, and to place before the Court, in the alternative, the conduct of defendants who may claim immunity, so that the record is complete and the Court may determine the applicability of such immunity in the first instance.

## II. JURISDICTION AND VENUE

### JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) (civil rights), because this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | | |
|---|---|---|
| ALBERT TERRENCE JOHNSON,<br>Plaintiff,<br><br>v.<br><br>JERMAINE FERGUSON, et al.,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-CV-05638** |

**ALBERT TERRENCE JOHNSON,**

Plaintiff,

v.

JERMAINE FERGUSON, in her individual and official capacities;

SALVADOR CARRILLO JR., in his individual and official capacities;

JOSHUA E. BURNETT, in his individual and official capacities;

REBECCA E. MILLER, in her individual capacity;

JIM LEITNER, in his individual capacity;

ROCHELLE MCCONAGA, in her individual capacity;

HARRIS COUNTY, TEXAS,

Defendants.

Civil Action No. ____________________

**JURY TRIAL DEMANDED**

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(1)–(2) because one or more defendants reside in this district, and because a substantial part of the events giving rise to the claims occurred in Harris County, Texas, which lies within the Southern District of Texas, Houston Division.

6. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202, and to award damages, costs, and reasonable attorney's fees under 42 U.S.C. § 1988.

7. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343. Venue is proper because substantial events occurred in Harris County, Texas, within the Southern District of Texas, Houston Division, and because the defendants sued for conduct occurring there are subject to jurisdiction in this District.

## III. PARTIES

**PARTIES**

8. Plaintiff Albert Terrence Johnson is a resident of the State of Texas and was at all relevant times the operator and owner of the vehicle described herein.

9. Defendant Jermaine Ferguson was at all relevant times a Deputy employed by the Harris County Constable's Office, Precinct 4, acting under color of state law. She is sued in her individual and official capacities.

10. Defendant Salvador Carrillo Jr. was at all relevant times a Sergeant employed by the Harris County Constable's Office, Precinct 4, acting under color of state law. He is sued in his individual and official capacities.

11. Defendant Joshua E. Burnett was at all relevant times a Deputy employed by the Harris County Constable's Office, Precinct 4, acting under color of state law. He is sued in his individual and official capacities.

12. Defendant Rebecca E. Miller was at all relevant times an Assistant District Attorney for Harris County, Texas. She is sued in her individual capacity only, and only with respect to conduct alleged herein to be investigative rather than advocative in nature.

13. Defendant Jim Leitner was at all relevant times an Assistant District Attorney for Harris County, Texas. He is sued in his individual capacity only, and only with respect to conduct alleged herein to be investigative rather than advocative in nature.

14. Defendant Rochelle McConaga was at all relevant times acting as an affiant and administrative log manager at the time of the action for Harris County in connection with the criminal complaint filed against Plaintiff. She is sued in her individual capacity.

15. Defendant Harris County, Texas is a political subdivision of the State of Texas and the public employer of the individual law-enforcement defendants named above. Harris County owns and operates the toll road on which the events herein occurred and handles the administrative procedures of the court and enforcement procedures & rules of its officials.

## IV. COMMON FACTUAL ALLEGATIONS

### A. July 14, 2023 Traffic Stop and License Verification

16. On July 14, 2023, at approximately 5:17 p.m., Plaintiff was traveling westbound on the North Sam Houston Toll Road (Beltway 8) in Harris County, Texas, operating his personal 2011 Volkswagen Jetta, license plate NTC2399.

17. Deputy Ferguson initiated a traffic stop for an alleged vehicle-prohibited-on-toll-road violation and requested a driver's license and proof of financial responsibility. Plaintiff subsequently provided a Texas state identification card and asked for a supervisor after Defendant Ferguson stated that Plaintiff should hand over the vehicle key because the vehicle would be towed. Plaintiff then requested a supervisor.

18. Sergeant Carrillo arrived on scene, repeated the demand, and ordered Plaintiff to exit the vehicle so that the vehichle may be towed. Plaintiff initially declined because he believed that no reasonable, articulable suspicion or probable cause had been stated to justify surrendering physical control of the vehicle or otherwise escalating the seizure. Plaintiff also alleges that he was concerned about an unreasonable seizure of his person.

19. Plaintiff initially declined to exit the vehicle by speech alone. After Defendants Carrillo and Burnett physically engaged Plaintiff and directed him to step out, Plaintiff exited the vehicle. Plaintiff was then placed in handcuffs and searched before being placed in the back of Officer Burnett's patrol unit. Sergeant Carrillo told Plaintiff that he was 'not under arrest' but that the officers needed to remove the vehicle and relocate it to a nearby gas station. Plaintiff was not advised of an arrest status or read rights at that time.

20. During the encounter, Defendants Ferguson and Carrillo conducted a database check using Plaintiff's identifying information. That check confirmed that Plaintiff possessed a valid Texas driver's license at the time of the stop. The same inquiry may also have identified outstanding Class C warrants, including a failure-to-appear matter associated with driving while license invalid. Plaintiff does not challenge the facial validity of those pre-existing warrants merely because his license was confirmed valid; rather, the license verification is pleaded to show what the officers knew during the encounter when they escalated the stop and pursued a new Interference with Public Duties charge.

### B. Handcuffing, Relocation, and New Interference Charge

21. At the gas station, Deputy Ferguson and Sergeant Carrillo contacted Assistant District Attorney Rebecca Miller concerning whether Plaintiff should be charged with Interference with Public Duties. The charge was accepted under DA Log No. 296-0345. Plaintiff alleges that the charge was pursued despite the officers' knowledge that Plaintiff's driver's license was valid and despite the contemporaneous account that Plaintiff ultimately exited the vehicle when ordered.

22. The criminal complaint supporting the interference charge was signed by affiant Rochelle McConaga, who was not present at the scene and, according to Plaintiff's allegations, had no personal knowledge of the underlying encounter. The complaint alleged that Plaintiff, 'with criminal negligence, refused to voluntarily exit' the vehicle while Officer Ferguson was performing a duty granted by law. Plaintiff alleges that this materially conflicts with Ferguson's contemporaneous written report, which states that Plaintiff was asked to exit and thereafter exited the vehicle. Assistant District Attorney Jim Leitner witnessed signed and attested to the complaint. The complaint presently available to Plaintiff contains a blank in the section stating 'Probable Cause found' followed by 'Capias to issue,' leaving the precise nature and timing of any judicial probable-cause determination to be established through official records.

23. The complaint and the officer report therefore present two materially different factual accounts of the conduct allegedly constituting interference: the sworn complaint characterized the conduct as refusing to voluntarily exit, while the contemporaneous officer account states that Plaintiff ultimately exited the vehicle and was placed in handcuffs. Plaintiff alleges that this discrepancy was material to probable cause.

24. Plaintiff's vehicle was searched and taken into towing and/or impoundment custody, and Plaintiff was transported to the Harris County Sheriff's Office Detention Facility, where he was booked and detained for approximately 24 to 48 hours before release on personal recognizance.

25. On August 9, 2023, Plaintiff appeared in Harris County Criminal Court at Law No. 9. Court-appointed counsel Neil Krugh declined Plaintiff's repeated requests to file a motion challenging the court's subject-matter jurisdiction.

### C. Subsequent Criminal Proceedings and Termination

26. second appearance was required on October 5, 2023. According to the summons, plaintiff was not required to appear on that date. After that appearance, plaintiff received no notice of any future court dates despite his attempts to contact attorney krugh and a warrant for failure to appear was later issued. On that warrant in Montgomery County, Texas, plaintiff was transferred to Harris County custody, and detained an additional several days before release on bond.

27. On May 28, 2024, Plaintiff appeared before Judge Toria J. Finch, declined court-appointed representation, and again challenged the court's subject-matter jurisdiction. Plaintiff alleges that Judge Finch denied the challenge and all motions on plaintiffs alleged lack of authority without conducting the jurisdictional hearing Plaintiff requested and ordered a Faretta hearing instead. Judge Finch claimed the hearing not to be on record when requested by plaintiff due to the absence of a court reporter on the hearing date. Plaintiff cites Arbaugh v. Y & H Corp., 546 U.S. 500 (2006), and Capron v. Van Noorden, 6 U.S. (2 Cranch) 126 (1804), as authorities he relied upon in raising the issue.

28. On May 30, 2024, a Faretta hearing was conducted before Judge Shannon Baldwin. Plaintiff again raised his jurisdictional challenge on the record. Plaintiff requested assistance of counsel and alleges that the distinction between assistance and appointment was not recognized, due to Judge baldwins alleged lack of knowledge, resulting in coercion or misunderstanding concerning the waiver of counsel. Standby counsel was appointed following the hearing for reconciliation.

29. when consulting with Standby counsel, counsel declined, on repeated occasions between May and August 2024, to file a motion to dismiss for lack of subject-matter jurisdiction on Plaintiff's behalf. Plaintiff alleges that Judge Finch did not address his verbal objections and motions during hearings, ignoring the plaintiff and not allowing a fair chance to be heard, and that his written jurisdictional arguments were not presented by counsel.

30. A jury trial was set for August 7, 2024. On August 6, 2024—the day before trial—the State of Texas moved to dismiss all charges against Plaintiff for insufficient evidence. The prosecution therefore terminated without a conviction.

31. As a direct and proximate result of the conduct described above, Plaintiff suffered deprivation of liberty through multiple periods of detention, loss of personal property, economic loss, and emotional distress, etc...

**D. Vehicle Search, Removal, Towing, and Impoundment**

32. Plaintiff incorporates by reference the preceding allegations of this Complaint.

33. Plaintiff incorporates by reference the preceding allegations. At the time of the incident, Defendants asserted that Plaintiff was operating the vehicle in violation of Texas Transportation Code §601.191 and that the vehicle would be towed or impounded. Plaintiff alleges that Defendant Ferguson made this representation before Plaintiff was asked to exit the vehicle. Plaintiff challenges the legal basis for the continued custody and impoundment of the vehicle, not the proposition that Texas law can ever authorize removal of a vehicle for a financial-responsibility violation.

34. Texas Transportation Code §545.305(a)(8)(B), as applicable to the conduct alleged here, authorized a peace officer to remove or require the operator or person in charge of a vehicle to move the vehicle from a highway when the vehicle was being operated in violation of §601.191. Section 545.305(b) further permits the vehicle to be taken to a garage or other place of safety, a governmental garage, or a position off the paved or main traveled portion of the highway. Plaintiff therefore acknowledges that an initial roadway removal based upon a current §601.191 violation may have been lawful even though Plaintiff's driver's license was valid.

35. The distinction is between that authority to remove a vehicle from the highway and the separate statutory mechanism governing a §601.191-based impoundment following a second or subsequent conviction. Section 545.305 does not, standing alone, establish that every §601.191 allegation automatically results in the §601.261 form of court-ordered impoundment.

36. Texas Transportation Code §601.261 provides that, on a second or subsequent conviction for an offense under §601.191, the court shall order the sheriff of the county in which the court has jurisdiction to impound the motor vehicle operated by the defendant at the time of the offense when the statutory ownership requirements are satisfied. Section 601.262 establishes the duration of an impoundment under §601.261 and the procedure for release of the vehicle.

37. Plaintiff alleges that no court order directing the sheriff to impound Plaintiff's vehicle under §601.261 had been issued at the time of the July 14, 2023 encounter. Plaintiff further alleges that the officers did not identify or produce such an order when Ferguson initially stated that the vehicle would be towed or impounded because of the alleged failure to maintain financial responsibility.

38. Harris County Sheriff's Office Policy 619 further recognizes that an impoundment under Texas Transportation Code § 601.261 requires a court order. The policy provides that, when a motor vehicle is ordered impounded under § 601.261, a deputy "shall not tow" the vehicle until the deputy has possession of either the original or a certified copy of the court order instructing the Sheriff to impound the vehicle. At the time Defendants Ferguson and Carrillo caused Plaintiff's vehicle to be impounded, Plaintiff alleges that no such original or certified § 601.261 court order existed or was presented to the officers. Thus, the mere existence of a prior or subsequent conviction did not itself constitute the court order contemplated by § 601.261 and HCSO Policy 619, and Defendants' reliance upon the conviction as independent authority to impound Plaintiff's vehicle was contrary to the procedure governing a § 601.261 impoundment.

39. Plaintiff therefore alleges that the existence of a subsequent §601.191 conviction in his driving history did not, by itself, establish that the officers at the roadside possessed the separate court-ordered impoundment authority described in §601.261. Plaintiff's claim turns on what statutory authority existed at the time, what authority Defendants actually invoked, whether its prerequisites were satisfied, and whether the scope and duration of the resulting custody exceeded the authority supporting the initial removal.

40. Plaintiff alleges that the officers may have relied upon Plaintiff's failure to maintain financial responsibility and/or his prior traffic-enforcement history as the asserted legal basis for continued governmental custody of the vehicle, rather than upon an existing §601.261 court order. If Defendants contend that a different statutory or constitutional authority supplied the basis for the continued impoundment.

41. Plaintiff alleges that Defendants' demand that he exit the vehicle was not merely an ordinary traffic-safety instruction. According to Plaintiff's allegations, the demand occurred in the context of Ferguson's statement that the vehicle would be towed and was intended, at least in part, to obtain physical control of Plaintiff's property and facilitate continued towing, storage, and/or impoundment.

42. Plaintiff did not consent to surrendering control of the vehicle for an asserted impoundment that Defendants had not established was lawfully authorized. Plaintiff's objection to the asserted seizure is therefore pleaded as part of the factual context surrounding the later §38.15 charge and the vehicle seizure.

43. Plaintiff's initial refusal to exit the vehicle did not, standing alone, establish probable cause for Interference with Public Duties. Plaintiff alleges that the dispute consisted principally of verbal objections to the officers' asserted authority, followed by Plaintiff's eventual exit from the vehicle.

44. Plaintiff specifically alleges that Defendants Carrillo and Ferguson lacked probable cause to believe that Plaintiff had committed an offense merely because Plaintiff questioned or objected to their asserted authority to tow or remove the vehicle.

45. Nevertheless, after initiating removal of the vehicle from the highway, Defendants escalated the encounter by arresting Plaintiff for alleged Interference with Public Duties under Texas Penal Code §38.15.

46. Plaintiff alleges that the new §38.15 arrest lacked probable cause based upon the facts known to the officers at the time, notwithstanding the separate existence of facially valid pre-existing warrants.

47. Specifically, Plaintiff alleges that he did not commit the conduct necessary to establish a violation of §38.15 and that Defendants lacked facts establishing that Plaintiff, with criminal negligence, interrupted, disrupted, impeded, or otherwise interfered with an officer while that officer was performing a duty or exercising authority actually imposed or granted by law.

48. Section 38.15 does not itself authorize an officer to arrest a person merely because the officer wants to obtain custody of the person's vehicle. The officer must have probable cause to believe that the statutory elements of the offense were satisfied.

49. The existence of an asserted statutory authority to remove a vehicle from the highway does not eliminate the Fourth Amendment requirement that any subsequent seizure of the person or property be objectively reasonable and supported by the applicable legal predicate.

50. Plaintiff therefore alleges that Defendants' order to exit, insofar as it was issued to facilitate an otherwise unsupported towing or impoundment, was part of the escalation of the seizure rather than an independent lawful basis for statutory impoundment.

51. Plaintiff further alleges that the temporal sequence of the events is significant. The officers initially asserted that the vehicle would be towed because of the financial-responsibility issue and then sought to remove the vehicle from the toll road. Only thereafter did the officers pursue the new §38.15 charge and use the resulting arrest as an additional asserted basis for taking or retaining custody of the vehicle.

52. Plaintiff alleges that Defendants may not retroactively substitute a later legal justification for the reason contemporaneously asserted for the seizure if the later justification did not exist or was not the actual basis on which the initial seizure was undertaken.

53. To the extent Defendants contend that Texas Transportation Code §545.305(a)(8)(A) authorized removal because Plaintiff was arrested, that provision applies to a vehicle operated by a person whom an officer arrests for an alleged offense and whom the officer is required by law to take into custody. Plaintiff challenges the use of the allegedly unsupported §38.15 arrest as the predicate for additional vehicle custody. Plaintiff does not contend that a facially valid outstanding warrant can never supply a separate lawful basis for custody or vehicle handling.

54. Defendants therefore cannot rely on an allegedly unsupported §38.15 arrest as an independent justification for the vehicle seizure without establishing a lawful basis for that arrest and the resulting custody. If Defendants rely on another arrest-related authority, Plaintiff alleges that the particular facts supporting that authority must be evaluated separately.

55. Plaintiff does not allege merely that Defendants made an incorrect legal determination. Plaintiff alleges that Defendants knew, or were objectively unreasonable in failing to recognize, that the facts did not establish probable cause for the new §38.15 offense and nevertheless used that charge to escalate the government's seizure of Plaintiff and his vehicle.

56. The Fourth Amendment protects against unreasonable seizures of persons and property. Plaintiff alleges that the probable-cause inquiry must be assessed from the facts known to the officer at the time of the challenged seizure or arrest.

57. Plaintiff further alleges that the absence of probable cause is particularly significant because the alleged §38.15 arrest occurred only after the officers had already initiated removal of the vehicle based upon the §601.191 allegation.

58. Plaintiff therefore alleges that Defendants unlawfully converted a potentially authorized statutory vehicle-removal encounter into a substantially greater seizure by using an unsupported criminal arrest as an asserted mechanism for taking Plaintiff and his vehicle into continued governmental custody.

59. Plaintiff's claim is not that a §601.191 allegation can never result in removal or towing. Plaintiff expressly acknowledges that §545.305 may authorize removal of a vehicle being operated in violation of §601.191. Plaintiff instead alleges that Defendants were required to possess an actual, lawful statutory and constitutional basis for the particular seizure, storage, or impoundment they imposed.

60. Plaintiff further alleges that other doctrines potentially relied upon by Defendants must be identified and evaluated according to their actual requirements. These may include removal following a lawful arrest under §545.305(a)(8)(A), removal because a vehicle constitutes a hazard or interferes with a governmental function under §545.305(a)(9), a valid community-caretaking or public-safety rationale under applicable Fourth Amendment law, or an inventory search following a lawful impoundment. Plaintiff does not concede that any such alternative basis existed here; he alleges that the contemporaneous facts and records must establish the actual basis relied upon.

61. If Defendants contend that the Jetta was merely moved to a place of safety under §545.305, Plaintiff alleges that the evidence concerning the vehicle's subsequent location, duration of custody, towing and storage charges, inventory, and release procedure must be examined to determine whether the governmental action remained a temporary roadway removal or became a continued custodial impoundment.

62. If Defendants contend that community caretaking, public safety, hazard removal, or another independent doctrine justified the continued custody, Plaintiff alleges that the Court must evaluate the objective circumstances existing at the time and the actual governmental purpose for the seizure. A later invocation of an alternative doctrine does not itself establish that the doctrine was the contemporaneous basis for the seizure.

63. Plaintiff alleges that the officers' conduct must therefore be evaluated according to the actual legal basis for each stage of the seizure: (a) the initial stop and investigation; (b) the alleged §601.191 violation; (c) the initial removal of the vehicle; (d) the subsequent §38.15 arrest and/or execution of existing warrants; and (e) the subsequent towing, storage, inventory, or impoundment.

64. Plaintiff alleges that Defendants lacked lawful probable cause for the new §38.15 offense, and that the allegedly unsupported charge was then used to justify or facilitate additional custody of Plaintiff and/or the vehicle.

65. The resulting seizure of Plaintiff's person and vehicle was therefore unreasonable to the extent the continued seizure exceeded the lawful authority supporting the initial removal.

### E. Arrest Warrent and Execution

66. The database check is a central fact in this action. Plaintiff alleges that, during the encounter itself, Ferguson and Carrillo confirmed that Plaintiff possessed a valid Texas driver's license. Plaintiff does not challenge the validity of the pre-existing FTA warrants merely because the license was later confirmed valid. Rather, the license verification is pleaded to show what these officers knew at the time they decided to escalate the encounter and pursue a new interference charge.

67. Plaintiff pleads each claim independently and, where necessary, in the alternative. Plaintiff does not ask the Court to invalidate the facially valid failure-to-appear warrants described below. Instead, Plaintiff distinguishes the execution of those warrants from the separate probable-cause determination supporting the new Interference with Public Duties charge arising from the July 14, 2023 encounter.

68. Plaintiff recognizes that the existence of facially valid outstanding warrants may constitute probable cause for the execution of those warrants and may affect the analysis of a conventional false-arrest claim under Wells v. Bonner. Plaintiff does not contend otherwise. The existence of those warrants, however, does not establish probable cause for the separate offense of Interference with Public Duties arising from the July 14, 2023 encounter, nor does it categorically establish the reasonableness of every subsequent search, seizure, vehicle impoundment, or period of detention.

69. Plaintiff therefore pleads each seizure according to its actual asserted legal basis. To the extent the officers acted pursuant to the outstanding warrants, Plaintiff challenges only conduct exceeding the lawful scope of those warrants. To the extent Defendants arrested, searched, detained, prosecuted, or continued to detain Plaintiff on the separate §38.15 charge, Plaintiff alleges that the charge lacked probable cause and independently caused or contributed to the resulting seizure.

70. Under Chiaverini v. City of Napoleon, the existence of probable cause for one charge does not categorically defeat a Fourth Amendment claim arising from a separate invalid charge when that invalid charge causes a detention to begin or continue. 602 U.S. 556 (2024). Thus, even if the outstanding warrants establish probable cause for some portion of Plaintiff's custody, they do not categorically eliminate Plaintiff's claim that the unsupported §38.15 charge caused an additional or continued seizure.

71. Plaintiff further alleges that the search of his person and seizure of his vehicle must be evaluated independently according to the legal justification actually asserted for each act. Plaintiff does not rely solely upon the invalidity of the §38.15 charge to establish that every search or property seizure was unlawful. Instead, Plaintiff alleges that Defendants lacked the particularized constitutional or statutory justification required for each challenged search or seizure.

72. Plaintiff expressly anticipates the defenses recognized in Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995), Comichi v. Pethel, No. 25-10954 (5th Cir. June 23, 2026), and Williams v. Town of Clinton, No. 26-30139 (5th Cir. Aug. 17, 2026). Those authorities make the precise factual basis and sequence of the seizure material. Plaintiff therefore pleads separately: (1) the new §38.15 arrest; (2) the simultaneous execution of pre-existing FTA warrants; (3) the later use of the new charge in the criminal process; and (4) the continuation of detention attributable to the allegedly unsupported charge.

73. Plaintiff further pleads that the existence of a valid warrant is not alleged to create probable cause for an unrelated offense committed during a later encounter. To the extent Defendants contend that the warrants independently authorized the entire seizure, Plaintiff pleads in the alternative that the warrants authorized only the custody attributable to those warrants and did not establish probable cause for, or immunize Defendants from liability arising from, the separate §38.15 accusation and any detention caused by that accusation.

**F. Transfers, and Subsequent Detention**

74. Plaintiff further alleges that the conduct described in this Complaint resulted in multiple periods of physical confinement and deprivation of liberty arising from the Harris County charge. The initial arrest in Harris County resulted in approximately twenty-four (24) hours of detention before Plaintiff was released on a personal-recognizance bond. Thereafter, in connection with the same underlying Harris County matter, Plaintiff was arrested in another Texas county and held for approximately two (2) days while awaiting transfer to Harris County. Harris County officials subsequently took custody of Plaintiff and transported him to Harris County, where Plaintiff was detained for approximately forty-eight (48) additional hours following the transfer, including detention associated with an alleged failure to appear relating to the initial arrest, before Plaintiff was again released on a personal-recognizance bond. Thus, Plaintiff experienced approximately six (6) days of physical detention arising from the sequence of arrests, transfers, and continued confinement associated with the Harris County prosecution.

75. Plaintiff does not allege that the mere fact that he was transferred between counties constituted a constitutional violation. Rather, Plaintiff alleges that the initial arrest, the subsequent detention pending transfer, and the continued detention in Harris County were unconstitutional to the extent that each period of confinement was caused or continued by the absence of constitutionally sufficient probable cause, or by legal process that was procured, maintained, or materially affected through false, fabricated, misleading, or materially incomplete factual assertions. The Fourth Amendment protects against unreasonable seizures and governs pretrial detention both before and after the commencement of legal process. Where legal process fails to establish constitutionally adequate probable cause, the existence of that process does not, by itself, extinguish a Fourth Amendment claim. Manuel v. City of Joliet, 580 U.S. 357 (2017).

76. Plaintiff further alleges that the Defendants' conduct described throughout this Complaint was a substantial factor in causing, initiating, maintaining, or materially contributing to the arrests and resulting periods of detention. To the extent any warrant, probable-cause determination, complaint, failure-to-appear allegation, or other process was based upon materially false, fabricated, misleading, or incomplete information known to the responsible officials, Plaintiff alleges that the resulting confinement was not supported by constitutionally sufficient probable cause. Plaintiff therefore seeks damages for the deprivation of his physical liberty during the approximately six-day sequence of confinement, including the loss of freedom of movement, incarceration, emotional distress, humiliation, disruption of his affairs, and other damages recoverable under 42 U.S.C. § 1983 and applicable law.

77. Plaintiff further alleges that each Defendant is liable only to the extent that Defendant personally participated in, caused, directed, knowingly relied upon, or otherwise materially contributed to the constitutional deprivation alleged herein. Plaintiff does not seek to impose liability upon a Defendant merely because that Defendant occupied a supervisory, prosecutorial, judicial, or governmental position; rather, liability is based upon each Defendant's own acts or omissions and the causal connection between those acts or omissions and Plaintiff's unlawful seizure or continued detention.

### G. Separate Legal Bases for the July 14 Seizure: New §38.15 Arrest Versus Execution of Existing Warrants

78. Plaintiff acknowledges that the database inquiry disclosed outstanding Class C failure-to-appear warrants and that those warrants were facially valid. Plaintiff does not ask this Court to declare those warrants invalid merely because their underlying matters involved a driving-while-license-invalid charge, financial-responsibility allegations, or toll-related obligations.

79. Plaintiff alleges, however, that the officers did not arrest Plaintiff solely pursuant to those warrants. The encounter also resulted in a new arrest and criminal charge for Interference with Public Duties under Texas Penal Code §38.15 arising from Plaintiff's conduct during the July 14 traffic stop. The pre-existing warrants and the new §38.15 charge therefore must be distinguished in determining the legal basis for each seizure and each period of detention.

80. The warrants for failure to appear did not establish that Plaintiff committed Interference with Public Duties during the July 14 encounter. They arose from separate proceedings and separate alleged failures to appear. A warrant for one offense or procedural violation is not itself evidence that a person committed an unrelated offense during a later police encounter.

81. Plaintiff anticipates that Defendants will rely on Wells v. Bonner and related Fifth Circuit authority for the proposition that probable cause for any charge supporting an arrest can defeat a conventional false-arrest claim. Plaintiff pleads this issue directly rather than ignoring it. Under Comichi v. Pethel, the Fifth Circuit recently reaffirmed the Wells rule but nevertheless allowed a false-arrest claim to proceed where, considering the charges that formed the asserted basis for the arrest, probable cause existed for neither charge. Comichi also emphasized that probable cause is assessed from the facts within the officer's knowledge at the moment of arrest.

82. Plaintiff further anticipates reliance on Williams v. Town of Clinton, where the Fifth Circuit held that an arrest actually conducted pursuant to a facially valid bench warrant defeated the plaintiff's false-arrest claim. Plaintiff alleges that Williams is factually distinguishable because Plaintiff is not alleging that the pre-existing FTA warrants were invalid or that their execution was unlawful. Plaintiff alleges that the officers simultaneously initiated and/or maintained a separate new arrest for §38.15 without probable cause. The warrants therefore cannot be treated as proof of probable cause for the new offense.

83. Plaintiff pleads in the alternative that the §38.15 charge nevertheless caused or contributed to additional detention, booking, prosecution, legal process, and other seizures. Plaintiff further pleads that the Fourth Amendment malicious-prosecution theory must be evaluated charge-by-charge under Chiaverini v. City of Napoleon, 602 U.S. 556 (2024), and that a valid charge does not categorically foreclose a claim based upon an invalid charge that causes or continues a seizure.

84. Plaintiff therefore requests that the Court determine from the contemporaneous arrest report, booking records, warrant returns, charging documents, DA intake records, jail records, and other evidence what legal bases the officers actually invoked for the July 14 seizure, the sequence in which those bases were invoked, and which portions of Plaintiff's subsequent detention were caused by the warrants as opposed to the new §38.15 charge.

85. Plaintiff does not seek to convert the valid FTA warrants into a constitutional violation. The issue is causation: whether Defendants may use those warrants as a complete retroactive justification for a separate criminal accusation that they themselves initiated without probable cause, and for detention or prosecution caused by that accusation.

### H. Prosecutorial Intake and Evidence Development

86. Plaintiff anticipates that Defendants Miller and Leitner may assert absolute prosecutorial immunity. Plaintiff alleges that the applicability of absolute immunity must be determined according to the function actually performed by each Defendant, rather than merely by the fact that each Defendant was employed as a prosecutor. See Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Burns v. Reed, 500 U.S. 478, 486–96 (1991); Buckley v. Fitzsimmons, 509 U.S. 259, 269–76 (1993); Wooten v. Roach, 964 F.3d 395, 402–09 (5th Cir. 2020); Terwilliger v. Reyna, 4 F.4th 270, 280–82 (5th Cir. 2021); Wearry v. Foster, 33 F.4th 260, 266–73 (5th Cir. 2022).

87. Plaintiff does not challenge the ordinary advocative functions of a prosecutor, including presenting the State's case in court or evaluating already-developed evidence for purposes of litigation. Plaintiff's allegations instead concern conduct occurring during the development and establishment of the factual basis for probable cause and the criminal charge.

88. On July 14, 2023, Defendants Ferguson and Carrillo contacted Defendant Rebecca Miller concerning whether Plaintiff should be charged with Interference with Public Duties.

89. At the time of that communication, the factual basis for the proposed charge was still being developed and evaluated. The officers had recently encountered Plaintiff, had conducted a database inquiry using Plaintiff's identifying information, and had obtained information concerning the status of Plaintiff's driver's license.

90. Plaintiff alleges, based upon the information presently available to him, that Defendant Miller was informed of the officers' account of the encounter and knew or was informed that the officers' database inquiry had confirmed that Plaintiff possessed a valid Texas driver's license.

91. Plaintiff further alleges that Defendant Miller participated in determining whether the facts presented by the officers were sufficient to establish probable cause to accept and pursue the Interference with Public Duties charge.

92. Plaintiff alleges that Defendant Miller's involvement was not limited to evaluating and presenting evidence already established for purposes of a judicial proceeding. Rather, Plaintiff alleges that her involvement in the intake process caused or directed the officers to continue developing, obtaining, or modifying evidence and factual assertions necessary to support the proposed criminal charge.

93. Plaintiff alleges that this conduct, to the extent established through discovery, constituted participation in the acquisition, development, or creation of evidence used to establish probable cause and therefore was investigative in function rather than advocative.

94. Plaintiff further alleges that the factual development undertaken in connection with the charge ultimately resulted in a criminal complaint containing the material assertion that Plaintiff "refused to voluntarily exit" the vehicle.

95. Plaintiff alleges that this assertion was materially inconsistent with Defendant Ferguson's contemporaneous written report, which Plaintiff alleges stated that Plaintiff exited voluntarily and without force.

96. Plaintiff further alleges that Defendant Miller had an opportunity, before the charge was accepted, to evaluate the factual circumstances underlying the proposed charge and the information supplied by the arresting officers.

97. Plaintiff alleges that Defendant Miller nevertheless participated in the acceptance and factual development of the charge despite the existence of information that materially contradicted the factual basis later asserted in the criminal complaint.

98. With respect to Defendant Jim Leitner, Plaintiff alleges that Defendant Leitner signed or attested to the criminal complaint as a witness to the factual allegations attributed to Defendant McConaga.

99. Plaintiff alleges that Defendant McConaga was not present at the July 14, 2023 encounter and therefore lacked personal knowledge of the events described in the complaint.

100. Plaintiff further alleges that Defendant Leitner knew or should have known that Defendant McConaga was not a witness to the underlying encounter and nevertheless attested to or endorsed factual assertions concerning what allegedly occurred during that encounter.

101. Plaintiff alleges that the factual assertion that Plaintiff "refused to voluntarily exit" the vehicle was material to establishing probable cause for Interference with Public Duties.

102. Plaintiff further alleges that the assertion was materially contradicted by Defendant Ferguson's contemporaneous report stating that Plaintiff exited voluntarily when asked and without force.

103. To the extent Defendant Leitner personally verified, endorsed, supplied, adopted, or otherwise participated in the creation or factual development of these assertions for purposes of establishing probable cause, Plaintiff alleges that such conduct was investigative in function and was not merely the advocative presentation of evidence to a court.

104. Plaintiff therefore alleges that Defendants Miller and Leitner are not entitled to absolute prosecutorial immunity for investigative conduct undertaken in connection with the acquisition, development, creation, verification, or endorsement of factual information used to establish probable cause.

105. Plaintiff further alleges, in the alternative, that if the Court determines that any challenged conduct by Defendants Miller or Leitner was advocative rather than investigative, Plaintiff requests that the Court identify the specific conduct to which absolute immunity applies and distinguish that conduct from any independent investigative conduct alleged herein.

106. Plaintiff does not contend that every action taken by a prosecutor in connection with a criminal case is investigative. Plaintiff's claim is limited to conduct in which Defendants allegedly performed functions normally performed by investigators or law-enforcement officers in developing or creating the factual basis for probable cause.

107. Plaintiff further alleges that the functional character of Defendants' conduct is a factual issue concerning documents and communications between Defendants Miller and Leitner and the arresting officers, the DA intake records, the officers report, and the affiants criminal complaint.

**I. Affiant McConaga, Lack of Personal Knowledge, and Material Factual Discrepancy**

108. Plaintiff further alleges that Defendant Rochelle McConaga was not an injured party or eyewitness to the conduct upon which the criminal allegation was based and did not personally observe the alleged interference upon which the prosecution was subsequently founded. To the extent McConaga purported to act as a complaining witness concerning conduct she did not personally observe, or experience her affidavit did not establish personal knowledge of the alleged criminal conduct. Texas Code of Criminal Procedure article 15.05 requires a complaint to show that the accused in fact committed an offense, either directly or that the affiant has good reason to believe, and does believe, that the accused committed the offense. Plaintiff alleges that McConaga's affidavit instead supplied a materially inaccurate factual account of an event she did not personally witness and that the factual assertions attributed to her were obtained or communicated to her during the investigation rather than from her own firsthand observation. This distinction is material because the prosecution was thereafter based upon an alleged factual occurrence that McConaga lacked personal knowledge to establish.

109. Plaintiff further alleges that McConaga, The officer, or the State of Texas had no personal injury in fact arising from Plaintiff's alleged conduct and was not the person whose governmental duties Plaintiff allegedly interfered with. Article III's standing doctrine requires an actual or imminent injury that is concrete and particularized, fairly traceable to the challenged conduct, and likely to be redressed by judicial relief. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). Plaintiff recognizes that those Article III requirements govern a party's standing to invoke federal judicial power and do not, standing alone, establish that a private person must be the injured party before the State may prosecute a Texas criminal offense. Plaintiff nevertheless alleges that McConaga's absence of personal injury and lack of firsthand knowledge are material to whether her sworn allegations supplied a reliable and constitutionally sufficient factual basis for probable cause and whether she knowingly or recklessly supplied false information that was used to procure Plaintiff's arrest and prosecution.

110. Plaintiff further alleges that the conduct attributed to him consisted, in material part, of speech and verbal objections concerning the officers' asserted authority to tow or seize his vehicle. Texas Penal Code § 38.15(d) expressly provides that "[i]t is a defense to prosecution under this section that the interruption, disruption, impediment, or interference alleged consisted of speech only." Tex. Penal Code § 38.15(d). Plaintiff alleges that McConaga knew, or was informed during the investigation, that Plaintiff's alleged interference consisted of verbal objections and challenges to the officers' asserted authority rather than physical obstruction, assault, flight, or other physical interference. Plaintiff further alleges that McConaga nevertheless supplied or adopted the materially false characterization that Plaintiff refused to exit the vehicle, despite the contemporaneous officer account establishing that Plaintiff ultimately exited the vehicle voluntarily.

111. Plaintiff further alleges that McConaga was not physically present at the scene and was not a witness to the encounter giving rise to the criminal charge. Rather, Plaintiff alleges that McConaga received information concerning the incident verbally through the District Attorney's Office, where she was employed, and thereafter prepared or adopted an affidavit concerning facts that she had not personally witnessed. Plaintiff alleges that this circumstance is particularly significant because McConaga's affidavit was subsequently used as though it constituted firsthand witness evidence, despite her lack of personal observation and despite material contradictions between her account and the investigating officer's contemporaneous account.

112. Plaintiff alleges that McConaga's statement concerning Plaintiff's alleged refusal to exit the vehicle was therefore not merely an inaccurate description of a collateral fact. It was a material factual assertion concerning the conduct allegedly constituting interference with a peace officer. Plaintiff alleges that McConaga knew, or recklessly disregarded the fact, that the investigating officers' own account established that Plaintiff ultimately exited the vehicle voluntarily. Plaintiff further alleges that McConaga knew that the dispute preceding Plaintiff's exit consisted principally of Plaintiff verbally challenging the officers' asserted authority to tow or remove his vehicle.

113. Plaintiff further alleges that the materiality of this false assertion is demonstrated by the sequence of events: the officers initially attempted to remove or tow Plaintiff's vehicle; Plaintiff challenged the asserted authority to do so; Plaintiff initially declined to comply with the demand to exit while questioning that authority; Plaintiff thereafter voluntarily exited the vehicle; the officers subsequently determined that the intended vehicle seizure or tow could not lawfully proceed; and the matter was thereafter referred for criminal investigation and prosecution. Plaintiff alleges that the subsequent use of McConaga's affidavit transformed a dispute concerning the officers' authority and Plaintiff's verbal objections into an asserted factual basis for criminal interference.

114. Plaintiff therefore alleges that McConaga's conduct was materially different from that of an ordinary citizen merely reporting an incident she personally witnessed. Plaintiff alleges that she supplied sworn factual assertions concerning events she did not personally observe, received information concerning those events through governmental investigative channels, knew or should have known of the contradictory officer account and the speech-only nature of Plaintiff's conduct, and nevertheless caused those assertions to be placed into the investigative and prosecutorial record.

115. Plaintiff further alleges that the false and materially misleading information supplied by McConaga was material to the probable-cause determination. Under Franks v. Delaware, 438 U.S. 154, 155–56, 171–72 (1978), a probable-cause determination cannot rest upon a knowingly and intentionally false statement, or a statement made with reckless disregard for the truth, where the false statement is material to probable cause. Plaintiff therefore alleges that, when the challenged assertion is removed and the contradictory facts are considered, the remaining evidence did not establish probable cause on the same factual theory used to initiate Plaintiff's prosecution.

116. Plaintiff further alleges that the State's subsequent dismissal of the criminal charge is consistent with the absence of a sustainable prosecution based upon the factual theory supplied through McConaga's affidavit. Plaintiff does not contend that dismissal alone establishes that no probable cause ever existed; rather, Plaintiff alleges that dismissal, when considered together with the contradictory officer report, the speech-only nature of the alleged conduct, McConaga's lack of personal knowledge, and the absence of any physical interference, supports Plaintiff's allegation that the prosecution was procured through materially false and misleading information.

117. Plaintiff therefore alleges that McConaga's conduct contributed directly and foreseeably to the initiation and continuation of the criminal proceeding and to Plaintiff's resulting arrest and detention. Plaintiff seeks relief for the resulting Fourth Amendment deprivation under 42 U.S.C. § 1983 and, to the extent supported by the evidence, separately pleads the applicable state-law theory of procurement or malicious prosecution.

### J. Clarification Concerning Article III, Judicial Immunity, and the Theory Actually Pleaded

118. Plaintiff alleges that the criminal proceeding was initiated and maintained despite the absence of a legally sufficient factual basis establishing that Plaintiff committed the offense alleged. Plaintiff further alleges that the factual predicate presented to the prosecuting authorities was materially false because the alleged refusal to exit the vehicle was contradicted by the investigating officer's own account that Plaintiff ultimately exited the vehicle voluntarily, and because the conduct relied upon to constitute interference consisted, in material part, of Plaintiff's verbal objections and challenges to the officers' asserted authority. Plaintiff further alleges that Texas Penal Code § 38.15(d) expressly recognizes a defense to prosecution where the alleged interruption, disruption, impediment, or interference consisted of speech only.

119. Plaintiff recognizes that the Article III injury-in-fact requirement articulated in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992), governs standing to invoke the jurisdiction of a federal court and does not, standing alone, establish that a Texas criminal court lacks subject-matter jurisdiction merely because a private complainant did not personally sustain an injury. Plaintiff therefore does not rely upon Article III standing alone as the basis for the jurisdictional challenge. Rather, Plaintiff alleges that the absence of a personal injury to McConaga, her lack of firsthand knowledge of the underlying encounter, the speech-only character of the alleged interference, the voluntary exit established by the investigating officer's account, and the materially false factual assertion concerning Plaintiff's alleged refusal to exit are relevant facts demonstrating that the prosecution lacked the factual and constitutional predicate asserted by the State.

120. Plaintiff further alleges that to the extent any judicial officer knowingly exercised authority in a proceeding over which the court was in the clear absence of all jurisdiction, such conduct falls outside the protection of absolute judicial immunity. See Bradley v. Fisher, 80 U.S. 335, 351–52 (1872); Stump v. Sparkman, 435 U.S. 349, 356–57 (1978). Plaintiff distinguishes between an ordinary judicial error or an erroneous interpretation of a criminal statute, which generally remains protected by judicial immunity, and an exercise of judicial authority in the clear absence of all jurisdiction. Plaintiff pleads the jurisdictional issue separately and in good faith and does not rely upon disagreement with a judicial ruling alone as a basis for damages liability.

121. Plaintiff further alleges that the jurisdictional and probable-cause defects must be considered together with the manner in which the prosecution was initiated. Plaintiff alleges that the State's criminal theory depended materially upon factual assertions supplied through McConaga's affidavit, including the assertion that Plaintiff refused to exit the vehicle, despite contrary evidence known or available during the investigation. Plaintiff alleges that the resulting arrest and detention therefore were not merely the consequence of an independent judicial determination, but were the foreseeable consequence of materially false information supplied during the investigative and prosecutorial process.

122. Plaintiff further alleges that the State's subsequent dismissal of the charge does not, standing alone, establish a jurisdictional defect, but is relevant to the termination of the criminal proceeding and to Plaintiff's claim that the prosecution did not result in a conviction. Plaintiff relies principally upon the Fourth Amendment seizure caused or materially contributed to by the procurement of criminal proceedings through materially false or misleading factual allegations, rather than treating malicious prosecution or Article III standing as an independent constitutional tort.

123. Plaintiff does not name the state-court judges as defendants in this action and does not seek damages from them. References to judicial immunity are included only to clarify that Plaintiff's federal claims are directed to the acts of the named defendants and not to judicial rulings themselves.

## K. False or Misleading Information and the Independent-Intermediary Issue

124. Plaintiff further alleges that any subsequent probable-cause determination by a magistrate, whether reflected in a warrant, magistrate record, docket entry, electronic determination, or other judicial record, could not independently cure a materially false or misleading factual presentation if the determination was based upon the false or materially incomplete information supplied by Defendant Rochelle McConaga. The criminal complaint filed in this matter expressly alleged that Plaintiff interfered with Officer J. Ferguson "by refusing to voluntarily exit his motor vehicle," and identified McConaga as the sworn affiant. The copy of the complaint presently available to Plaintiff contains a blank in the section stating "Probable Cause found" followed by "Capias to issue," thereby leaving the precise nature and factual basis of any subsequent probable-cause determination to be established through the official magistrate and warrant records.

125. Plaintiff alleges that any such later determination must be evaluated against the actual evidence available to the investigating authorities. The contemporaneous Ferguson report states that Plaintiff initially refused to step out after being repeatedly asked, challenged the officers concerning the asserted authority to tow his vehicle, and stated that Sgt. Carrillo would have to use excessive force; however, the same report expressly states that after asked the Plaintiff thereafter stepped out of the vehicle and was placed in handcuffs and in the back of a patrol unit. The report further states that Ferguson then contacted Assistant District Attorney Rebecca Miller, explained the encounter, and that interference charges were accepted. Plaintiff alleges that McConaga's subsequent sworn characterization materially misstated or materially omitted the actual sequence of events and that the difference was material to whether the alleged conduct constituted criminal interference.

126. Plaintiff invokes the rule recognized in Franks v. Delaware, 438 U.S. 154, 155–56, 171–72 (1978), that when materially false statements are knowingly and intentionally made, or made with reckless disregard for the truth, and are necessary to a finding of probable cause, the false material must be excised and the remaining evidence examined to determine whether probable cause survives. The Fifth Circuit has expressly applied this principle to arrest warrants and has recognized that liability may extend not only to the person who signs the warrant affidavit but also to a person who supplies false information for the purpose of compiling the warrant affidavit. See Hughes v. Garcia, No. 22-20621 (5th Cir. 2024); Laviage v. Fite, 47 F.4th 402, 406 (5th Cir. 2022).

127. Plaintiff further alleges that any subsequent magistrate determination does not sever causation if the magistrate's deliberation was materially tainted by the false information supplied by McConaga. The Fifth Circuit recognizes an exception to the independent-intermediary doctrine where the intermediary's deliberations are in some way tainted by the defendant's conduct. See Terwilliger v. Reyna, 4 F.4th 270, 281–83 (5th Cir. 2021). Accordingly, Plaintiff alleges that the existence of a subsequent warrant, magistrate determination, docket entry, or electronic probable-cause determination cannot be treated as dispositive without first determining what information was presented to the magistrate and whether the determination remained supported by probable cause after the challenged falsehoods and material omissions are removed.

128. Plaintiff further alleges that the corrected factual account must include the contemporaneous officer report showing that Plaintiff ultimately exited the vehicle and that the dispute preceding his exit involved Plaintiff's verbal challenges to the officers' asserted authority to tow the vehicle. Plaintiff further alleges that Texas Penal Code § 38.15(d) expressly provides a defense to prosecution where the alleged interference consists of speech only. Plaintiff does not contend that the existence of this statutory defense automatically eliminates probable cause in every case; rather, Plaintiff alleges that the statutory defense, the actual sequence of events, Plaintiff's ultimate voluntary exit, the contradiction between the sworn complaint and the contemporaneous officer report, and the circumstances under which McConaga acquired the information were all material facts that had to be considered in determining whether the alleged offense was supported by probable cause.

129. Plaintiff therefore alleges, in the alternative, that either (a) no constitutionally sufficient probable cause existed when the arrest and prosecution were initiated, or (b) any apparent probable cause was materially dependent upon false or misleading factual information supplied by McConaga and therefore was constitutionally tainted. Plaintiff further alleges that, had the material falsehoods been removed and the material contradictory facts been presented, the probable-cause determination would not have been the same.

### L. Rebecca Miller — Investigative Function Versus Advocacy

130. Plaintiff further alleges that Defendant Rebecca Miller's involvement in the matter was, at least initially, investigative rather than advocative. The contemporaneous Ferguson report states that, after the encounter with Plaintiff, Ferguson contacted Rebecca Miller, explained the circumstances of the encounter, and that the "charges of Interference were accepted," identifying DA log number 2960345. Plaintiff alleges that Miller's participation at that stage occurred while the facts giving rise to the proposed criminal charge were still being investigated and before the formal written criminal complaint had been completed, attested, and filed.

131. The subsequent written complaint demonstrates that the formal charging process continued after the officers' communication with Miller. The complaint identifies Rochelle McConaga as the affiant, states that the complaint was prepared on July 15, 2023, identifies Jim Leitner as an Assistant District Attorney, and contains separate dates indicating that the affidavit was signed and sworn on July 14 and duly attested, prepared and logged on July 15. The complaint also contains a blank space in the section stating "Probable Cause found" followed by "Capias to issue." Plaintiff therefore alleges that the formal prosecutorial record was created through a continuing investigative and charging process rather than through a completed judicial determination that independently established probable cause before the challenged factual allegations were incorporated into the complaint.

132. Plaintiff alleges, upon information and belief and subject to discovery of the complete District Attorney investigative file, that Miller participated in the investigative evaluation of the encounter before and during the preparation of the formal complaint, including evaluating the officers' account, determining whether an interference charge could be accepted, and participating in the process by which the factual allegations supporting the charge were reduced to a sworn complaint. Plaintiff further alleges that Miller's role at this stage was not limited to presenting an already-established prosecution to a court, but involved the investigative question of whether the facts supported probable cause for a criminal charge.

133. The functional nature of Miller's conduct is significant because prosecutorial immunity depends upon the function performed rather than the person's title. See Buckley v. Fitzsimmons, 509 U.S. 259, 269, 273–74 (1993); Burns v. Reed, 500 U.S. 478, 493 (1991). The Fifth Circuit has likewise recognized that a prosecutor is not absolutely immune when performing investigative functions ordinarily performed by police or investigators, particularly where the prosecutor is gathering facts, developing evidence, or assisting law enforcement in determining whether probable cause exists. See Morgan v. Chapman, 969 F.3d 238, 246–47 (5th Cir. 2020); Terwilliger v. Reyna, 4 F.4th 270, 280–81 (5th Cir. 2021).

134. Plaintiff further alleges that Miller's investigative participation is material because the officers' own report establishes that Miller was contacted after Plaintiff had already exited the vehicle and had been placed in handcuffs, and that the alleged interference charge was then accepted. Plaintiff alleges that, at that point, the government possessed information materially inconsistent with the later allegation contained in McConaga's sworn complaint that Plaintiff interfered "by refusing to voluntarily exit his motor vehicle." Plaintiff therefore alleges that Miller was involved in evaluating a factual dispute during the investigative stage and that the subsequent McConaga affidavit became part of the formal evidentiary record used to support the charge.

135. Plaintiff further alleges that if Miller participated in requesting, directing, encouraging, reviewing, adopting, or relying upon McConaga's factual allegations while the investigation was still determining whether probable cause existed, such conduct was investigative in character rather than protected advocacy. Plaintiff specifically alleges that Miller's involvement must be evaluated according to the function actually performed and not merely by reference to her title as an Assistant District Attorney. See Buckley, 509 U.S. at 269, 273–74; Morgan, 969 F.3d at 246–47.

136. Plaintiff further alleges that the chronological sequence is material to determining whether the independent-intermediary doctrine can sever causation. If the prosecuting authority participated in developing the factual basis for the charge before a neutral judicial officer independently determined probable cause, then the subsequent judicial proceeding cannot automatically transform investigative conduct into protected advocacy. Plaintiff alleges that any later judicial determination must therefore be examined to determine what information was presented to the magistrate, whether the determination was based upon materially false or misleading information, and whether probable cause would have existed after the material falsehoods and omissions were corrected.

137. Plaintiff further alleges that the available records presently establish two distinct stages: first, the officers' investigative contact with Miller concerning whether an interference charge should be accepted; and second, the preparation, execution, attestation, and filing of the formal complaint containing McConaga's disputed factual allegation. The Ferguson report places Miller's contact before the formal complaint was prepared, while the complaint itself reflects the subsequent formalization of the accusation. Plaintiff therefore seeks discovery concerning Miller's communications with Ferguson and the other officers, the DA log associated with the charge, the preparation and transmission of McConaga's affidavit, and the precise date and circumstances under which Miller or the District Attorney's Office determined that the interference charge would be accepted.

138. Plaintiff further alleges that the sequence is particularly significant because the criminal accusation ultimately rested upon a factual assertion that Plaintiff refused to voluntarily exit the vehicle, while the contemporaneous officer report states that Plaintiff ultimately exited the vehicle and that the officers thereafter contacted Miller regarding the interference charge. Plaintiff alleges that this discrepancy raises a substantial factual question concerning who developed the theory that Plaintiff's conduct constituted criminal interference, when that theory was developed, what information Miller possessed when the charge was accepted, and why the subsequent McConaga affidavit characterized the encounter in the manner alleged in the complaint.

M. Jim Leitner — Evidence Development, Attestation, and Investigative Function

139. Plaintiff further alleges that Defendant Jim Leitner's conduct must be evaluated according to the function he performed rather than merely according to his title as an Assistant District Attorney. The criminal complaint identifies Rochelle McConaga as the affiant and identifies Jim Leitner as an Assistant District Attorney associated with the Harris County District Attorney's Office. The complaint reflects that McConaga's statement was sworn on July 14, 2023, that the document was duly attested on July 15, 2023, and that the complaint was thereafter filed with the Harris County District Clerk. Plaintiff alleges that Leitner participated in the process by which McConaga's factual allegations were reduced to, authenticated, attested to, adopted, or otherwise placed into the formal criminal complaint used to initiate the prosecution.

140. Plaintiff alleges that Leitner's involvement was investigative and evidence-development activity to the extent that he participated in obtaining, preparing, reviewing for factual sufficiency, authenticating, witnessing, notarizing, or otherwise developing McConaga's sworn factual allegations before the criminal proceeding had been independently supported by a constitutionally sufficient determination of probable cause. Plaintiff alleges that this conduct was directed toward creating or establishing the factual evidentiary basis for the criminal charge rather than merely presenting already-established evidence to a judicial tribunal.

141. Plaintiff further alleges that the distinction is material because the central factual assertion contained in the complaint—that Plaintiff interfered with Officer Ferguson "by refusing to voluntarily exit his motor vehicle"—was disputed by the contemporaneous investigative record. The Ferguson report states that Plaintiff initially refused to step out after being asked, but also expressly states that Plaintiff thereafter stepped out of the vehicle and was placed in handcuffs. The same report states that Ferguson then contacted Assistant District Attorney Rebecca Miller, explained the encounter, and that the interference charges were accepted. Plaintiff alleges that Leitner therefore participated in the formalization of a factual allegation that materially differed from the contemporaneous officer account.

142. Plaintiff further alleges that, if Leitner reviewed, discussed, directed, requested, encouraged, drafted, edited, authenticated, attested to, or otherwise participated in the creation or adoption of McConaga's factual statement while the factual basis for the charge was still being investigated and developed, such conduct constituted investigative or evidence-development activity rather than the traditional advocative function of presenting an already-established prosecution. Plaintiff alleges that Leitner's function at that stage was to help establish the factual basis upon which probable cause and the criminal charge would be predicated.

143. The Supreme Court and Fifth Circuit apply a functional approach to prosecutorial immunity. A prosecutor is absolutely immune when acting as an advocate for the State in initiating and pursuing a prosecution and presenting the State's case, but not when performing investigative functions ordinarily performed by police or detectives. See Buckley v. Fitzsimmons, 509 U.S. 259, 269, 273–74 (1993); Burns v. Reed, 500 U.S. 478, 493 (1991); Morgan v. Chapman, 969 F.3d 238, 246–47 (5th Cir. 2020). The Fifth Circuit has specifically recognized that where a prosecutor acts as a detective searching for evidence or corroboration that might establish probable cause, the prosecutor is not entitled to absolute prosecutorial immunity for that conduct.

144. Plaintiff further relies upon Van Buren v. Cave, 6 F. App'x 183 (5th Cir. 2001), in which the Fifth Circuit held that a prosecutor who prepared and notarized a materially false affidavit during the process of initiating judicial proceedings was acting in an investigative rather than advocative capacity where probable cause had not yet been established. Plaintiff alleges that the same functional distinction applies here to the extent Leitner participated in preparing, authenticating, attesting to, or otherwise developing the affidavit containing the factual basis for Plaintiff's prosecution before a neutral judicial officer independently established probable cause.

145. Plaintiff further alleges that the mere fact that Leitner was an Assistant District Attorney does not convert investigative evidence-development into protected advocacy. The Fifth Circuit has held that absolute prosecutorial immunity does not extend to a prosecutor's investigative activities merely because those activities ultimately relate to a decision to prosecute. See Morgan, 969 F.3d at 246–47; Singleton v. Cannizzaro, 956 F.3d 773, 780–83 (5th Cir. 2020). The relevant inquiry is the nature of the function performed at the time of the alleged constitutional deprivation.

146. Plaintiff further alleges that Leitner's involvement is particularly significant because the challenged factual assertion was not simply evidence presented to a court after an independent probable-cause determination. Rather, the challenged assertion was incorporated into the complaint itself as the factual allegation establishing that Plaintiff had committed the offense. Plaintiff alleges that the process of obtaining and placing that assertion into the charging instrument was part of the factual development and initiation of the criminal proceeding and therefore was not necessarily an advocative function protected by absolute immunity.

147. Plaintiff further alleges that if Leitner knew that McConaga lacked firsthand knowledge of the encounter, knew or had access to the contemporaneous Ferguson report, knew that Plaintiff ultimately exited the vehicle, and nevertheless participated in the preparation, attestation, authentication, or adoption of an affidavit asserting that Plaintiff interfered "by refusing to voluntarily exit his motor vehicle," such conduct constituted the acquisition, creation, or use of potentially false evidence during the investigative stage. Plaintiff alleges that such conduct is outside the core advocative function and is instead analogous to the investigative conduct discussed in Buckley, Morgan, Wearry, and Van Buren.

148. Plaintiff further alleges that Leitner's conduct should be evaluated separately from any subsequent advocative conduct he may have performed after a constitutionally sufficient probable-cause determination. Plaintiff does not contend that every action subsequently taken by Leitner as a prosecutor was investigative. Rather, Plaintiff challenges the specific acts of evidence development, factual authentication, affidavit preparation or attestation, and participation in establishing the factual basis for the criminal charge before or during the initial probable-cause process.

149. To the extent Leitner asserts absolute prosecutorial immunity, Plaintiff alleges that such immunity cannot be determined solely from Leitner's governmental title or his later participation as a prosecutor. Plaintiff alleges that discovery is necessary to determine the precise role Leitner played in obtaining, preparing, reviewing, authenticating, witnessing, attesting to, or submitting McConaga's affidavit; what information Leitner possessed concerning the Ferguson report; what communications occurred between Leitner, Miller, Ferguson, McConaga, and other investigators; and whether Leitner participated in developing the factual basis for the charge before a neutral judicial officer independently determined probable cause.

## V. APPLICABLE LEGAL FRAMEWORK

### A. False Arrest and Qualified Immunity

150. A false-arrest claim requires a seizure without probable cause. The Fifth Circuit evaluates probable cause from the totality of facts and circumstances known to the officer at the moment of arrest. Comichi v. Pethel, No. 25-10954 (5th Cir. June 23, 2026).

151. Plaintiff recognizes the Fifth Circuit's Wells rule: if probable cause existed for any charge forming the basis of the arrest, a conventional false-arrest claim may fail. Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995). Plaintiff therefore does not plead that the warrants are irrelevant. He pleads instead that the warrants were separate pre-existing process, while the new §38.15 offense was independently asserted during the July 14 encounter, and that the new charge constituted the asserted basis of each portion of the seizure.

152. Plaintiff also recognizes Williams v. Town of Clinton, No. 26-30139 (5th Cir. Aug. 17, 2026), in which a facially valid bench warrant was held to defeat a false-arrest claim where the arrest was conducted pursuant to that warrant. Plaintiff pleads this case in the alternative so that, even if the Court concludes the warrants defeat a claim directed solely at the physical execution of the warrants, the Court may separately adjudicate the unsupported §38.15 charge, any seizure, detention attributable to that charge, and the Fourth Amendment malicious-prosecution claim.

### B. Malicious Prosecution and Multiple Charges

153. The Supreme Court's decision in Chiaverini v. City of Napoleon, 602 U.S. 556 (2024), requires courts to evaluate Fourth Amendment malicious-prosecution claims charge-by-charge. Thus, the existence of a valid charge does not categorically immunize an official from liability for a separate invalid charge that causes or continues a seizure.

154. Plaintiff's criminal case terminated without a conviction when the State moved to dismiss the charges for insufficient evidence on August 6, 2024. Plaintiff therefore pleads favorable termination under Thompson v. Clark, 596 U.S. 36 (2022), while recognizing that the absence of conviction is not by itself proof of lack of probable cause.

### C. Fabricated or Materially Misleading Probable-Cause Evidence

155. Plaintiff alleges that the statement that he 'refused to voluntarily exit' was materially different from the contemporaneous Ferguson report and was used to establish the factual basis of the interference charge. Plaintiff pleads that the statement was knowingly false or made with reckless disregard for the truth, that it was material, and that probable cause would not have existed on the same factual theory after the challenged statement was corrected.

156. Plaintiff relies on Franks v. Delaware, 438 U.S. 154 (1978), and Fifth Circuit authority recognizing that a materially false statement or omission can defeat reliance on a warrant or neutral intermediary where the challenged information was necessary to probable cause.

### D. Prosecutorial Immunity

157. Plaintiff does not dispute absolute immunity for traditional advocacy functions. The claim against Miller and Leitner is limited to alleged investigative, evidence-development, factual-authentication, or pre-probable-cause conduct. Prosecutorial immunity is functional, not title-based. Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Burns v. Reed, 500 U.S. 478 (1991); Morgan v. Chapman, 969 F.3d 238 (5th Cir. 2020); Terwilliger v. Reyna, 4 F.4th 270 (5th Cir. 2021).

158. Plaintiff further pleads that any act performed after an independent probable-cause determination and solely as an advocate is not the basis of the claim. This limitation is intended to separate potentially immune advocacy from the specific investigative conduct alleged.

### E. Monell Liability and the Limits of the County Theory

159. Plaintiff recognizes that Harris County cannot be held liable merely because it employed the individual defendants. Under Monell v. Department of Social Services, municipal liability requires a constitutional violation caused by an official policy, custom, or practice attributable to the municipality.

160. Plaintiff further recognizes that, under Fifth Circuit precedent, a Texas district attorney acting in the prosecutorial capacity to enforce state penal law acts as an agent of the State rather than the county. See Esteves v. Brock, 106 F.3d 674, 677–78 (5th Cir. 1997); Jane Doe v. Harris County, 882 F.3d 115 (5th Cir. 2018). Plaintiff therefore does not attribute the District Attorney's case-specific charging or prosecutorial conduct to Harris County.

161. The Fifth Circuit's decision in Prosper v. Harris County, No. 25-20362 (5th Cir. Mar. 27, 2026), further confirms that a local government's facially lawful practice of consulting prosecutors before an arrest does not itself establish Monell liability; a plaintiff must plead a policy attributable to the local government and facts supporting deliberate indifference to the particular constitutional risk. Plaintiff therefore does not rely upon prosecutor consultation itself as the County policy.

162. The County claim is instead limited to conduct attributable to Harris County's law-enforcement and vehicle-control functions, including traffic enforcement, towing and impoundment practices, treatment and use of enforcement records, training, supervision, and implementation of the statutory distinctions governing removal and impoundment. The individual claims against Miller and Leitner remain separate and are based only on their alleged personal investigative or evidence-development conduct.

## VI. MUNICIPAL LIABILITY AGAINST HARRIS COUNTY

163. Plaintiff incorporates by reference the preceding allegations of this Complaint as though fully set forth herein.

164. Plaintiff brings this claim against Harris County, Texas, pursuant to 42 U.S.C. §1983 for constitutional injuries caused by County policies, customs, practices, training, supervision, or decisions attributable to the County. Plaintiff does not rely on respondeat superior.

165. Plaintiff alleges that the constitutional deprivation arose in part from County-attributable law-enforcement practices governing traffic stops, financial-responsibility enforcement, vehicle removal, towing, storage, and impoundment, including the accurate treatment of prior enforcement records and the distinction between a current §601.191 violation, a citation or allegation, an actual qualifying conviction, and the separate court-ordered impoundment procedure described in §601.261.

166. Plaintiff alleges that these policies and practices were a moving force in the challenged seizure because officers relied upon governmental enforcement information in determining what consequences to impose upon Plaintiff and his vehicle. Plaintiff alleges that County practices failed adequately to ensure that officers distinguished between authority to remove a vehicle under §545.305 and authority to impose the separate statutory impoundment contemplated by §601.261.

167. Plaintiff further alleges that County law-enforcement training and supervision should have addressed the difference between (a) a vehicle's removable status under §545.305, (b) a qualifying second or subsequent conviction under §601.261, and (c) the existence of any court order required by §601.261 for sheriff-directed impoundment. Plaintiff alleges that inadequate training or supervision concerning these distinctions created a predictable risk of unconstitutional vehicle seizures.

168. Plaintiff alleges that the need for accurate treatment of conviction history and statutory prerequisites for heightened vehicle consequences was obvious because traffic officers routinely rely upon governmental records when determining whether a vehicle may be removed, stored, or impounded and what legal authority applies.

169. Plaintiff further alleges that County practices concerning traffic-enforcement records and towing/impoundment procedures created a predictable risk that an officer could treat a prior enforcement event or financial-responsibility history as automatically authorizing a form of impoundment that required a separate statutory predicate or court order.

170. Plaintiff alleges that this risk was particularly foreseeable because the distinction between roadway removal and court-ordered impoundment is contained in separate provisions of the Texas Transportation Code and because officers are required to exercise judgment concerning the legal basis for taking a vehicle into governmental custody.

171. Plaintiff alleges, upon information and belief, that County policies, training materials, supervisory practices, and towing procedures in effect on July 14, 2023 addressed traffic enforcement and vehicle disposition, including the use of prior enforcement information. Plaintiff seeks discovery sufficient to identify the precise policy, training, supervisory, and policymaking provisions applicable to the conduct alleged here.

172. Plaintiff further alleges that the constitutional injury was a highly predictable consequence of deficient implementation of these practices: an officer who treats a financial-responsibility violation or prior enforcement history as sufficient by itself to establish a heightened impoundment authority may escalate a traffic encounter beyond the scope of the authority actually provided by Texas law.

173. Plaintiff pleads final-policymaker liability only to the extent discovery establishes that an official with final policymaking authority for the relevant County law-enforcement, traffic-enforcement, towing, or vehicle-control function adopted, maintained, or ratified the challenged policy or practice. Plaintiff does not rely solely upon post-incident failure to discipline.

174. Plaintiff pleads deliberate-indifference and failure-to-train theories in the alternative to the extent the evidence establishes that County policymakers had actual or constructive notice of a pattern of similar constitutional violations or that the need for particularized training was so obvious that the constitutional injury was a highly predictable consequence of the County's

training or implementation decisions.

175. Plaintiff expressly does not attribute to Harris County the case-specific prosecutorial advocacy, charging decisions, or investigative acts of Defendants Miller or Leitner. Those individual claims are pleaded separately. The County claim is limited to County-attributable law-enforcement and vehicle-control conduct.

176. Plaintiff seeks discovery concerning Harris County Precinct 4 policies and procedures in effect on July 14–15, 2023; applicable traffic and towing procedures; training concerning §§601.191, 601.261, and 545.305; supervisory records; towing and impound records; records concerning prior enforcement information relied upon during the stop; complaints or substantially similar incidents; and records identifying the County policymaker or policymaking body responsible for the relevant law-enforcement and vehicle-control policies.

•a. Harris County Precinct 4 policies and procedures in effect on July 14–15, 2023;

•b. Policy 619 and all revisions, supplements, training materials, and directives associated with it;

•c. policies governing arrest, probable cause, investigative reports, supervisory review, and criminal charging;

•d. policies governing communications between Precinct 4 personnel and HCDAO Intake;

•e. HCDAO Intake policies and procedures applicable in July 2023;

•f. DIMS/DIM manuals and procedures applicable in July 2023;

•g. Log Manager procedures and training materials;

•h. procedures governing review and correction of DIMS charging information;

•i. policies governing preparation, review, authentication, attestation, or processing of criminal complaints;

•j. policies governing prosecutorial review of probable cause before acceptance of charges;

•k. training materials concerning Texas Penal Code § 38.15 and Interference with Public Duties;

•l. training materials concerning speech-only conduct and the distinction between protected speech and criminal interference;

•m. training concerning probable cause and material factual discrepancies;

•n. training and supervision concerning accurate preparation of criminal complaints and

probable-cause affidavits;

•o. the complete DIMS/DIM record associated with DA Log No. 2960345;

•p. all audit trails reflecting creation, modification, review, transmission, or approval of the charging information;

•q. communications between Ferguson and Assistant District Attorney Miller concerning Plaintiff's case;

•r. communications between law-enforcement personnel and Intake personnel concerning the proposed interference charge;

•s. records identifying the Intake personnel, Log Manager, prosecutor, administrative personnel, or other officials who reviewed or processed Plaintiff's charge;

•t. the original and subsequent versions of the charging information;

•u. records concerning any correction, rejection, supplementation, or modification of Plaintiff's charging information;

•v. training and personnel records demonstrating the functions assigned to the individuals who reviewed or processed Plaintiff's charge; and

•w. records identifying the Harris County policymaker or policymaking body responsible for the relevant policies and procedures.

A. Municipal Liability Elements and County-Attributable Conduct

B. Final-Policymaker and Ratification Theories

C. Deliberate Indifference, Notice, and Causation

D. County Policies Concerning Intake and Prosecutor Consultation — As-Applied Theory Only

177. Plaintiff alleges that County law-enforcement personnel were institutionally permitted to consult District Attorney Intake before or during charging. Plaintiff does not contend that such consultation is unconstitutional on its face. The allegation is that the County's own law-enforcement process failed to preserve accurate factual reporting and failed to prevent officers from presenting materially disputed or misleading factual assertions as the basis for the new charge.

178. To the extent the Court determines that the District Attorney's Office was acting solely as a State actor in prosecutorial functions, Plaintiff does not ask the Court to attribute those State functions to Harris County. Instead, Plaintiff relies on the County-attributable conduct of the law-enforcement defendants and County-controlled policies as the moving force, and pleads the prosecutor-related facts as evidence of the sequence, notice, causation, and individual investigative conduct.

### E. Requested Municipal Discovery

179. Plaintiff seeks discovery concerning the policies, training, supervision, records, audit trails, complaints, substantially similar incidents, and policymaker authority identified in the source allegations, including HCSO/Precinct 4 Policy 619, applicable traffic and towing procedures, procedures governing §601.191 and §601.261 enforcement, DIMS/DIM records, DA Log No. 2960345, communications concerning the proposed interference charge, and records identifying the responsible policymakers.

## VII. CAUSES OF ACTION

### COUNT I — FOURTH AMENDMENT: UNLAWFUL SEIZURE, FALSE ARREST, AND UNREASONABLE VEHICLE SEIZURE THROUGH INVALID CHARGE

180. Plaintiff incorporates the preceding allegations.

181. Defendants Ferguson and Carrillo lacked probable cause to arrest Plaintiff for Interference with Public Duties under Texas Penal Code §38.15. Plaintiff's alleged conduct consisted principally of verbal objections to the officers' asserted authority, followed by Plaintiff's eventual exit from the vehicle. Plaintiff alleges that the contemporaneous officer report materially contradicts the factual assertion later used in the criminal complaint.

182. Plaintiff alleges that the officers' conduct did not constitute criminal interference because the officers lacked facts showing that Plaintiff, with criminal negligence, interrupted, disrupted, impeded, or otherwise interfered with an officer while that officer was performing a duty or exercising authority imposed or granted by law.

183. Plaintiff acknowledges the separate FTA warrants. Those warrants are not challenged in this Count as invalid. They were, however, legally distinct from the new §38.15 offense. Plaintiff alleges that the warrants did not supply probable cause for the new offense and that the officers' own records identify the new interference charge as a separate basis for the seizure.

184. If the Court determines that the warrants independently defeated a conventional false-arrest claim as to the physical execution of the warrants, Plaintiff pleads alternatively that the unsupported §38.15 charge caused additional seizure, detention, booking, prosecution, and legal process, and that the Court should adjudicate those consequences separately.

185. Defendants are not entitled to qualified immunity at the pleading stage to the extent the well-pleaded facts, viewed in Plaintiff's favor, establish that no reasonable officer could have concluded that the alleged conduct constituted §38.15 interference, particularly where the Fifth Circuit has recognized that mere verbal disagreement with officers is insufficient and has recently reversed dismissal of a §38.15 false-arrest claim on closely related facts. See Comichi v. Pethel, No. 25-10954 (5th Cir. June 23, 2026).

186. Plaintiff further alleges that the search and continued seizure of his vehicle were unreasonable to the extent they were predicated upon the unsupported arrest or an asserted statutory impoundment prerequisite that did not exist.

## COUNT II — FOURTH AMENDMENT: MALICIOUS PROSECUTION / UNREASONABLE SEIZURE THROUGH INVALID CHARGE

187. Plaintiff incorporates the preceding allegations.

188. Defendants initiated and/or materially caused a criminal proceeding for Interference with Public Duties without constitutionally sufficient probable cause. The proceeding ended without conviction when the State moved to dismiss for insufficient evidence on August 6, 2024.

189. Plaintiff suffered seizures of his person as a consequence of the criminal legal process, including the initial detention and later detention associated with the Harris County prosecution.

190. Under Thompson v. Clark and Chiaverini v. City of Napoleon, Plaintiff alleges that the Fourth Amendment claim is not categorically barred merely because other charges or warrants were valid. The relevant question is whether the challenged charge itself lacked probable cause and caused or continued a seizure.

191. Plaintiff pleads this Count separately from the conventional false-arrest theory because the existence of a facially valid warrant may defeat a claim directed solely at the execution of that warrant, while it does not necessarily eliminate a charge-specific Fourth Amendment claim based on an invalid charge that caused or continued detention.

## COUNT III — FOURTH AMENDMENT / FRANKS: MATERIAL FALSEHOOD AND TAINTED PROBABLE-CAUSE PROCESS

192. Plaintiff incorporates the preceding allegations.

193. Defendant McConaga allegedly supplied or adopted a material factual assertion concerning conduct she did not personally observe, and that assertion was materially inconsistent with the contemporaneous Ferguson report. Plaintiff alleges that the assertion was knowingly false or made with reckless disregard for the truth and was material to probable cause.

194. Plaintiff further alleges that any neutral intermediary was materially affected by the false or misleading information to the extent it was included in the charging process presented for probable-cause determination. Plaintiff therefore invokes the exception to the independent-intermediary doctrine recognized where the intermediary's deliberation is tainted by the defendant's conduct.

## COUNT IV — FOURTH AMENDMENT / INDIVIDUAL LIABILITY OF MILLER AND LEITNER FOR INVESTIGATIVE CONDUCT

195. Plaintiff incorporates the preceding allegations.

196. Plaintiff alleges that Miller and Leitner, to the extent they participated in developing, directing, requesting, authenticating, attesting to, adopting, or otherwise creating factual material used to establish probable cause before an independent judicial determination, acted in investigative rather than purely advocative capacities.

197. Plaintiff does not seek to impose liability for traditional courtroom advocacy or prosecution of the case after a valid probable-cause determination. The claim is limited to alleged investigative conduct in creating or establishing the factual predicate for the charge.

## COUNT V — MUNICIPAL LIABILITY AGAINST HARRIS COUNTY UNDER MONELL

198. Plaintiff incorporates the preceding allegations.

199. Harris County's policies, customs, practices, training, supervision, recordkeeping, and law-enforcement/towing procedures were a moving force behind the alleged Fourth Amendment violations. Plaintiff does not attribute State prosecutorial advocacy or case-specific charging decisions to the County.

200. Plaintiff alleges County-attributable practices concerning traffic enforcement, treatment of prior enforcement records, the distinction between citations or allegations and convictions, the statutory prerequisites for vehicle removal and impoundment, accurate reporting, supervisory review, and implementation of towing and vehicle-control procedures. Plaintiff alleges that deficient implementation of those practices created a predictable risk of unreasonable vehicle seizure.

201. To the extent a County policymaker adopted, maintained, or ratified the challenged law-enforcement or vehicle-control practice, Plaintiff pleads final-policymaker liability. To the extent the written policy was facially lawful, Plaintiff pleads deliberate indifference in its implementation only to the extent supported by the evidence and applicable Monell standards.

## COUNT VI — FOURTEENTH AMENDMENT / FABRICATION OF EVIDENCE

202. Plaintiff incorporates the preceding allegations.

203. Plaintiff alleges that materially false factual assertions were knowingly or recklessly incorporated into the criminal charging process and were used to deprive him of liberty. Plaintiff pleads this claim in the alternative to the Fourth Amendment claims to the extent the Court recognizes a separate constitutional fabrication-of-evidence theory on the facts established through discovery.

## VIII. SPECIFIC RESPONSE

### A. Outstanding-Warrant Defense

204. Plaintiff does not dispute that the FTA warrants were facially valid. The anticipated defense is therefore not answered by arguing that the warrants were void. Instead, Plaintiff alleges a distinction between a seizure pursuant to an existing warrant and a separate arrest on a new charge. The warrant's existence did not establish the elements of §38.15 or provide probable cause for conduct occurring during the later traffic stop.

205. If the Court applies Williams and concludes that the warrants independently authorized the physical arrest, Plaintiff requests that the Court nevertheless determine whether the new §38.15 charge independently caused detention or prosecution. Plaintiff also preserves the charge-specific Fourth Amendment malicious-prosecution theory under Chiaverini.

### B. Wells / Comichi Any-Charge Rule

206. Plaintiff recognizes that Wells remains binding Fifth Circuit authority for conventional false arrest. Plaintiff therefore pleads that the new interference charge actually supplied the basis for the arrest. Rather than asking the Court to disregard, Wells. Comichi confirms that the rule still requires a charge-by-charge examination of the asserted bases for the arrest and recently permitted a §38.15 false-arrest claim to proceed where the alleged facts did not establish probable cause for the charges at issue.

### C. Independent Intermediary

207. Plaintiff alleges that any later probable-cause determination cannot automatically sever causation where the information presented to the intermediary was materially false or misleading and supplied by the defendants. The complaint identifies the precise factual discrepancy and alleges its materiality.

### D. Prosecutorial Immunity

208. Plaintiff limits the claims against Miller and Leitner to investigative or evidence-development conduct and does not challenge traditional advocacy. The functional analysis is fact dependent, and the complaint identifies the communications, charging records, affidavit, and sequence of events that discovery is expected to illuminate.

### E. Monell

209. Plaintiff does not rely on respondeat superior. The County theory identifies specific law-enforcement and towing practices, recordkeeping, training, supervision, policymaker theories, notice, deliberate indifference, and causation. Plaintiff expressly disclaims any theory that Harris County is liable merely because District Attorney personnel consulted with officers or participated in the prosecution. Under Esteves and Prosper, case-specific prosecutorial functions are not attributed to Harris County.

### F. Heck / Conviction Bar

210. Plaintiff was not convicted of the challenged interference charge. The State dismissed the charges for insufficient evidence. Plaintiff therefore does not seek relief that would imply the invalidity of an outstanding conviction arising from this prosecution.

## IX. DAMAGES AND INJURY

211. As a direct and proximate result of the alleged constitutional violations, Plaintiff suffered deprivation of liberty, multiple periods of detention, loss of freedom of movement, loss of or interference with personal property, vehicle towing and impoundment consequences, economic loss, emotional distress, humiliation, disruption of personal affairs, and other damages recoverable under federal law.

212. Following the incident, Plaintiff's driver's license became invalid, further impairing his ability to obtain and maintain employment and otherwise meet his financial obligations. Plaintiff alleges that these consequences were foreseeable and resulted from the sequence of events initiated by Defendants' actions, including the arrest, detention, and prosecution.

213. Plaintiff also suffered significant emotional and mental distress as a result of the loss of his liberty, disruption of his employment, loss of transportation, financial hardship, and the resulting instability in his personal life.Plaintiff ultimately suffered the loss of his housing through eviction. The eviction and resulting housing instability compounded the financial, emotional, and personal injuries Plaintiff had already sustained from the detention, loss of employment, loss of and invalidation of his driver's license/driving privileges.

214. Plaintiff therefore seeks recovery for all damages permitted by law, including lost wages and income, economic losses, loss of employment-related benefits, expenses and losses associated with the loss of driving privileges and housing, emotional distress and mental anguish, and other actual and consequential damages proven at trial. Plaintiff further seeks any other relief, including nominal or punitive damages where legally available and supported by the evidence, together with costs and such other relief as the Court determines appropriate.

215. Plaintiff alleges approximately six days of physical detention arising from the sequence described in the complaint, including the initial Harris County detention, detention in another county pending transfer, and additional Harris County detention. Plaintiff does not claim that every minute of that period was caused by the same legal basis. Rather, causation is pleaded separately for the new §38.15 charge, the valid FTA warrants, and subsequent legal process.

216. Plaintiff seeks compensatory damages in an amount to be proven at trial, together with nominal damages where appropriate and punitive damages against individual defendants where permitted by law.

## X. PRAYER FOR RELIEF

•Enter judgment in Plaintiff's favor against each Defendant on the claims established at trial;

•Award compensatory damages in an amount proven at trial, or in settlment;

•Award nominal damages where legally appropriate;

•Award punitive damages against individual Defendants sued in their individual capacities to the extent permitted by law;

•Award declaratory relief as permitted by 28 U.S.C. §§ 2201–2202;

•Award costs and, if Plaintiff obtains counsel and otherwise qualifies, attorney's fees under 42 U.S.C. § 1988;

•Grant such other and further relief as the Court deems just and proper.

## XI. JURY DEMAND

217. Plaintiff demands a trial by jury on all issues so triable under Federal Rule of Civil Procedure 38(b).

## XII. VERIFICATION

I, Albert Terrence Johnson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual statements in this Complaint are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

ALBERT TERRENCE JOHNSON
Plaintiff, Pro Se
4501 Twin Oaks Circle
Killee, TX 76542
2545351119
johnson.albert09@yahoo.com